LESLIE R. WEATHERHEAD
GEANA M. VAN DESSEL
WITHERSPOON, KELLEY, DAVENPORT & TOOLE
422 W. Riverside, Suite 1100
Spokane, WA  99201
Phone:  509.624.5265
Fax:  509.458.2717

Counsel for Defendant Sandra Evans

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WAPATO HERITAGE, LLC, a Washington Limited Liability Company; KENNETH EVANS; JOHN WAYNE JONES; and JAMIE JONES, individual residents of Washington State, | No. CV-07-314-EFS<br><br>MEMORANDUM IN SUPPORT OF SANDRA EVANS' MOTION FOR SUMMARY JUDGMENT |
| Plaintiffs, | |
| v. | |
| SANDRA D. EVANS, an individual, not a resident of Washington State; and DAN GARGAN, a citizen of Arizona, | |
| Defendants. | |

## I.    NATURE OF CASE & RELIEF SOUGHT

This is an action for breach of contract.  Defendant Sandra Evans seeks summary judgment dismissal because there are no triable issues of fact that (1) she did not breach the contract as alleged, and (2) Plaintiffs have suffered no damages.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

## II.    STATEMENT OF MATERIAL FACTS

The facts material to Sandra Evans' motion for summary judgment are set

forth in the Statement of Material Facts submitted with this brief.

## III.    AUTHORITY

A.    SANDRA EVANS HAS NOT BREACHED THE SETTLEMENT AGREEMENT.

1.    **Sandra Evans' Duty Under the Settlement Agreement was Unambiguous: Loan 35% of Her Income from MA-10 to Wapato Heritage by Executing an Assignment Form**.

The Settlement Agreement provides:

> In addition, Ms. Sandra Evans hereby agrees for a period of five years . . . to loan to the Wapato Heritage, LLC, an annual sum equal to thirty-five percent (35%) of the income from MA-10, at a rate of interest three points above the federal float rate. . . .

> The parties agree that the procedure Ms. Evans will use to disburse funds of this loan shall be through an assignment of 35% of the MA-10 quarterly payments made to Ms. Evans' IIM account. Each quarterly assignment shall be referred to as a separate assignment ("Assignments"), meaning that there are a total of twenty (20) assignments to be made under this Agreement.  Ms. Evans will cause, pursuant to and contemporaneous with this Agreement, to be executed an Assignment of the 35% of the twenty (20) MA-10 quarterly payments made to Ms. Evans' IIM account, payable by the Bureau of Indian Affairs within ten (10) days after Ms. Evans receives the Wright Wapato Corporation quarterly payment into her IIM account, and such assignments shall be signed by Ms. Evans and incorporated herein with this Agreement as Exhibit J.

SOF ¶¶ 20-22.

MEMORANDUM IN SUPPORT OF SANDRA EVANS' MOTION FOR SUMMARY JUDGMENT - 2

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

Exhibit J to the Settlement Agreement was specifically negotiated by the parties. SOF ¶ 23.  The form was obtained from the BIA, the information was input into the form by counsel for Ms. Evans, and it was carefully reviewed by counsel for the Plaintiffs.  SOF ¶¶ 26, 27, 45-47, 56-58.  It states, in relevant part:

> 3. . . . I hereby assign to the borrowers thirty five percent (35%) of all income from trust land known as MA-10 in which I now have or may in the future acquire an interest and any funds from MA-10 accruing to my individual Indian account, for the period of five (5) years commencing on ___, 2005.
>
> 4. I hereby grant to the authorized Bureau officer . . . having jurisdiction over the area in which the income from MA-10 is generated, deposited or retained, full right, power, and authority to demand, collect, sue, or receipt income from MA-10, and to apply such income . . . to the loan to the borrowers consisting of thirty five percent (35%) of all funds received from MA-10 to be paid by said officer to the borrowers above listed within ten days of receipt into the IIM account of Sandra Diane Evans, for the period of five years commencing on _____, 2005.
>
>     *     *     *     *     *
>
> 6. It is understood that in the case of my death, this assignment and power to lease shall constitute a claim against trust funds, income, or trust property superior to that of my heirs.
>
> 7.  No other security for said loan is given.

SOF ¶ 24.

Exhibit J contained a line, conspicuously denoted "APPROVAL" and a space for the "authorized Bureau officer" to sign.  *Id.*  Sandra Evans' duty was unambiguous: it was to execute and deliver the form of assignment of 35% of the income accruing to her IIM account from MA-10 valid for 20 quarters.  It is

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

undisputed that she did exactly that. SOF ¶ 50-52.  She is not in breach, notwithstanding that the BIA never gave its approval of the assignment.  SOF ¶ 51.  Though the funds may have not have been advanced to Wapato Heritage as it anticipated because of the BIA's refusal to give its approval, Sandra Evans is not in breach.

**2.    Because Federal Law Requires BIA Approval for an Assignment of Trust Income, the Loan Cannot be Made in the Agreed Manner Without BIA Approval.**

It is undisputed that MA-10 is property held in trust by the United States for the benefit of the allottee/beneficiaries who have interests in it.  SOF ¶ 2.  Federal law is clear that the assignment of any interest in trust property, or in income from trust property, can only be accomplished with the approval of the BIA:

> No money accruing from any lease . . . of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian . . . except with the approval and consent of the Secretary of the Interior.

25 U.S.C. § 410

Federal regulations issued under the statute make its application to Sandra Evans' assignment crystal clear:

> Individuals may give assignments of income from trust property as security for loans. . . . All assignments of trust income require approval by the Commissioner before becoming effective.

25 CFR § 101.13(d).

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

The statute plainly applies to trust property, and trust income (but not to "income on income"). *Squire v. Capoeman*, 351 U.S. 1 (1956). Funds derived from such leases may not be removed from an individual Indian money ("IIM") account unless there has been prior approval of the assignment by the BIA *and* an opportunity on behalf of the Indian to dispute the debt. *Kennerly v. U.S.*, 721 F.2d 1252 (9th Cir. 1983).

If the BIA does not give its consent to an assignment, the would-be assignee acquires nothing. *Stoltz v. U.S.*, 99 F.2d 283 (9th Cir. 1938); *In re Guardianship of Prieto's Estate*, 243 Cal.App.2d 79, 52 Cal.Rptr. 80, (Cal.App. 1966).

Plaintiffs accepted the risk that the BIA would not approve the assignment form incorporated into the Settlement Agreement as Exhibit J. The whole point of a contract, of course, is to allocate risk between consenting parties as to occurrence or non-occurrence of future events. "Virtually every contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance: 'The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it,-and nothing else.'" *Winstar v. U.S.,* 518 U.S. 839, 919 (1996) (Scalia, J., concurring, quoting Justice Holmes) (citation omitted).

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

In this case the Plaintiffs and Sandra Evans negotiated a loan of part of the income from MA-10 as part of their Settlement Agreement.  Sandra Evans offered simply to write a check periodically for the loan.  SOF ¶¶  65-66.  Plaintiffs refused that proposal.  SOF ¶¶ 68-70.  The Nephews did not trust Sandra Evans, SOF ¶¶ 31-35, so they insisted upon a formal assignment of the agreed percentage of MA-10 income as a means of making it harder, if not impossible, for Sandra Evans to change her mind.  SOF ¶ 36.  Sandra Evans was willing to agree to that procedure, on the belief that repayment of the loaned funds (for the future benefit of the individual Plaintiffs' family members) was more likely assured if the BIA were involved in approval of the transaction. SOF ¶ 44.  She and her lawyer believed that if the BIA approved the transaction, then the BIA might more easily be persuaded to seek repayment from allotment income flowing to Plaintiffs (from MA-8) in the future should the loans not be repaid.  SOF ¶ 44.  In executing a contract providing for an arrangement that depended upon the approval of the BIA, the Plaintiffs assumed the risk that BIA would withhold approval.

Mary Wynne and Mary Pearson, Sandra Evans' lawyers, state that they specifically called out this risk to Shelley Buckholtz, SOF ¶¶ 30, 39-41, the lawyer acting for Plaintiffs in negotiating the Settlement Agreement, SOF ¶ 26, and Sandra Evans says that she heard Ms. Wynne give this warning to Ms.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

Buckholtz during a telephone call.  SOF ¶ 42.  Ms. Buckholtz denies that they did, but this dispute of fact is immaterial given (1) the unambiguous terms of the Settlement Agreement; (2) the plain language of the statute and regulation requiring BIA approval; (3) the legal principle that the law is implied into every contract in Washington,; (4) Ms. Buckholtz' status as a licensed and experienced attorney; and (5) the undisputed fact that on June 27, 2005, while the Settlement Agreement was being negotiated, Ms. Wynne wrote Ms. Buckholtz (though not specifically in reference to the assignment provision) that BIA approval "is a matter of federal law and discretion and outside of our client's hands." SOF ¶ 30.

Sandra Evans is not in breach; she performed precisely as agreed.  The risk of BIA non-approval turned against the Plaintiffs. They are not now entitled to a reassignment of the risk.

### 3.    In Any Event, Sandra Evans Tendered a Substitute Performance That Plaintiffs Rejected.

Though it is doubtful that she had any duty to do so, when it became clear that the BIA was not going to approve the assignment the parties had contracted for, Sandra Evans tendered a substitute performance.  She proposed to make a loan.  SOF ¶¶ 65-66.  Since she no longer had the benefit of the quasi-security represented by BIA involvement, she proposed that reasonable arrangements to secure repayment. *Id.*  Plaintiffs put this proposal "on the shelf", and refused to

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

consider or discuss it.  SOF ¶¶ 68-70.  Plaintiffs did not make any counterproposal to Sandra Evans' loan proposal.  SOF ¶ 68.

Instead, Plaintiffs proposed their own alternative performance:  they insisted that Sandra Evans execute form OST 01-005.  SOF ¶ 71.  Plaintiffs suggest that this form is functionally the same as the form the parties contracted to use ("Exhibit J").  But it isn't the same at all.  From Plaintiffs' perspective, the differences include the following: (1) Under Exhibit J, control over the assigned funds would be removed from Sandra Evans and vested in the BIA, while Form OST 01-005 leaves Sandra Evans in full control of the funds; and (2) Under Exhibit J, the BIA would calculate the correct percentage of income and wire it directly to Wapato Heritage, SOF ¶¶ 48-49, 72-73, while under Form OST 01-005, Sandra Evans would be required to calculate the percentage and direct OST to send that amount to Wapato Heritage.  SOF ¶ 73.  Indeed, form OST 01-005 is in essence nothing more than a check – an order to a drawee to pay funds to a specified payee – something that Plaintiffs had adamantly said they did not want when the Settlement Agreement was negotiated.  *Id.*

Plaintiffs now pronounces that they are willing to accept form OST 01-005, even though it is in no way the equivalent of what the parties contracted for, and insist that Sandra Evans has an obligation to sign it.  The problem is that form

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

OST 01-005 is also markedly different from Exhibit J from Sandra Evans' perspective: it does not involve the BIA's exercise of discretion and oversight, and therefore reduces any likelihood that, should the Plaintiffs squander the loaned funds, the BIA will exercise its discretionary power to assist Sandra Evans in collecting from Plaintiffs' future MA-8 allotment income. SOF ¶¶ 44, 48-49, 73.  Plaintiffs have no right to insist that Sandra Evans convey a benefit upon them free of the correlative burden that existed under the contract they actually entered into.

Sandra Evans did not breach the contract. She performed exactly as agreed. Even though Plaintiffs had no right to insist on an alternate performance, Sandra Evans made a reasonable tender of an alternate performance, but Plaintiffs rejected it, and instead insisted on a form of alternate performance that would bring them the full benefit they desired in the original bargain but would deprive Sandra Evans of the benefit that she bargained for.   An order for summary judgment on liability should enter in favor of Sandra Evans.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

## B.  PLAINTIFFS CANNOT PROVE DAMAGES EVEN IF A BREACH IS ASSUMED.

### 1.  There Is No Competent Expert Proof of Plaintiffs' Claimed Lost Profits.

#### (a)  *Washington's New Business Rule Forecloses Lost Profits in Speculative Enterprises Absent Expert Testimony.*

Jurisdiction was alleged in this case under both federal question and diversity.  Complaint, at ¶ 3 (Ct. Rec. 1).  Plaintiffs' contract claims thus come before the Court either under the Court's ancillary jurisdiction or as diversity claims.  Either way, Washington's law of contract provides the rule of decision over Plaintiffs' contract claims. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

In Washington, a plaintiff can recover lost profits for breach of contract only when they are proven "with reasonable certainty."  *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 15 (1964).  Washington's law of contract forbids an award of lost profits where a plaintiff has no established business, unless competent expert testimony is offered:

> The new business rule precludes an unestablished business from obtaining lost profits as damages because when the business is in contemplation, but not established, profits that may be anticipated therefrom are too speculative, uncertain, and conjectural to become a basis for the recovery of damages for the subsequent loss of such profits.
>
> The new business rule was modified . . . to allow the recovery of lost profits when a reasonable estimation of damages can be made based on an analysis of the profits of identical or similar businesses operating under substantially the same market conditions.  Expert testimony alone is a sufficient basis for

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

an award of lost profits in the new business context when the expert opinion is supported by tangible evidence with a substantial and sufficient factual basis rather than by mere speculation and hypothetical situations.

*Kaech v. Lewis Cnty PUD*, 106 Wn. App. 260, 276-77 (2001) (internal citations and quotations omitted).   Federal courts deciding contract cases in Washington apply the New Business Rule.  *Milgard Tempering Inc. v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir. 1990).

### (b)   *Wapato Heritage Has No Established Residential Real Estate Development Business*.

Wapato Heritage is the only plaintiff in this action and the only party with a claim for lost profits.  *See* Complaint, at ¶ 33(iii) (Ct. Rec. 1).  Wapato Heritage operates a golf course and collects rent from an RV park located on MA-8.  SOF ¶ 81.   It has no established residential real estate development business.  Accordingly, Wapato Heritage can prove its claimed lost profits on its hoped for future development only through competent expert testimony.  *Kaech*, *supra*.

### (c)   *Plaintiffs Has No Damages Expert*.

Plaintiffs designated no damages expert and furnished no expert reports.  That forecloses Wapato Heritage's lost profits claim.  Plaintiffs proffered Jeff Webb, manager for Wapato Heritage, to offer speculative testimony about possible lost profits, but that testimony cannot be received by the Court, for several reasons.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

First, as outlined above, Washington's New Business Rule precludes damages for an unestablished business unless proven by an expert. Webb has no qualifications to testify as an expert, SOF ¶¶ 120-121, and the operator of a business cannot himself furnish testimony about hoped-for profits without running afoul of the rule (the very point of the New Business Rule is that the lack of an established business history per se disqualifies the business' claim as unreliable).

Second, if Plaintiffs intended to use Webb as an expert they were required to identify him as such and furnish a report. *Henricksen v. ConocoPhilips Co.*, __ F.Supp.3rd __ , 2009 WL 361201 *14, 78 Fed. R. Evid. Serv. 857 (E.D. Wa. 2009) (citing cases). It did not do so, and Webb cannot belatedly be designated to the disadvantage of the Defendants. *Id.*

Third, in any event, Webb did not arrive at any expert conclusions or opinions himself. Rather he performed a mathematical function on numbers that were produced to him by others on whose opinions he relied as to construction costs, likely selling prices, absorption rates, and discount rates. SOF ¶¶ 122-127. He offered no opinion of his own on construction costs, likely values and sale prices, absorption rates or appropriate discount rates. *Id.* These matters were all the subject of opinions of third parties who were not identified to defendants as experts; no expert designations, opinions, or reports were produced as to any of

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

the people whose assumptions and opinions Webb repeats.  Webb cannot be used as a Trojan horse to smuggle the unrevealed, untested opinions of other "experts" into the case without opportunity for cross-examination and rebuttal.  Such an approach would not only violate the defendants' right to full disclosure under Federal Rule of Civil Procedure 26 and this Court's Order, it would also render the undisclosed opinions inadmissible hearsay.  *See* 29 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6273, at 315 (explaining that although properly qualified experts may rely on hearsay matters appropriate to experts in their field, Federal Rule of Evidence "703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury.") (citations omitted).

Fourth, the proffered future value opinion is unreliable.  Webb himself has characterized the future prospects of the development as highly speculative and uncertain. SOF ¶ 130.  So did Kenneth Evans, a member of Wapato Heritage; he noted that the meltdown in the real estate markets in recent months has perhaps rendered the project utterly impossible to carry out – "It's all speculation."  SOF ¶ 129-130.  And they are right.  Quite apart from the market collapse that has rendered the success of the development venture unachievable (and in light of

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

which Webb has not sought revisions to any of the opinions he collected from third parties (SOF ¶ 127), there are several unresolved contingencies. First, it is undisputed that the intended development could not go forward unless Wapato Heritage obtained a new 99 year lease on MA-8. SOF ¶ 94-95. That means not only that Wapato Heritage must complete an Environmental Impact Statement as requested by the BIA, SOF ¶¶ 86, 97, but also that Wapato Heritage must convince the BIA that it is the best party to gain the benefit of the lease. SOF ¶¶ 113, 115, 116, 118, 119. There is considerable risk around that proposition: (1) the Confederated Tribes of the Colville Reservation are in opposition, having put their Colville Tribal Enterprise Corporation (which owns and operates the casino on MA-8) forward to compete for the right to the lease, SOF ¶ 113, after learning that the BIA had ruled that Wapato Heritage's existing lease would expire in February, 2009 and not in 2034. SOF ¶ 86; and (2) at least two of the owner allottee/beneficiaries (in addition to the Tribes) have announced opposition to Wapato Heritage being awarded the lease, and one of those asserts that it is a consensus among allottee/beneficiaries (who are all enrolled Indians) that Wapato Heritage (which is neither an Indian nor owned by enrolled Indians) should not be the lessee of MA-8 now that its former lease has expired. SOF ¶¶ 115, 116, 119.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

Here, where the very proponents of the value opinion characterize it as speculative, for very good reasons, it cannot pass muster under the New Business Rule or *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Plaintiffs have no admissible expert testimony on damages.

2.    **Plaintiffs' Alleged Lost Profits Are Also Unrecoverable Because Wapato Heritage LLC Failed To Mitigate**.

Plaintiffs claim entitlement to lost profits damages in the multi-millions of dollars.  Plaintiffs claims that in November 2007, the BIA informed Wapato Heritage that, contrary to its expectations, it would have to perform a full-blown Environmental Impact Statement ("EIS") related to its proposal to enter into a lease for 99 years and associated development plan. SOF ¶ 96.  Plaintiffs allege that the EIS would cost $200,000 and that it did not have that sum.  Plaintiffs allege that if they had had the $200,000 in December 2007, they could have arranged for the EIS to be completed and it would have been awarded the 99-year lease, which was an essential condition to the development plan, and Wapato Heritage would now have a property with a greater value – it alleges that increase to be $32 million.  *Id*.

Plaintiffs failed to mitigate that number.  Washington recognizes the rule of avoidable consequences, or mitigation.  The rule states:

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

> [W]here one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided.

*Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 731-32 (1982).

Here, notwithstanding Plaintiffs' assertion that it was worth $32 million to spend $200,000 for the EIS, Wapato Heritage took no steps whatsoever to do so. It is undisputed that Wapato Heritage continued to distribute $360,000 per year in net profits to its owners without retaining any portion to pursue the EIS. SOF ¶¶ 102-103. It never entertained even the possibility of retaining its earnings to meet its need to support its development plans. SOF ¶ 103. Its manager, Webb, never spoke to any bank, let alone applied to any bank, for a loan of $200,000. SOF ¶ 100. Although Sandra Evans offered to negotiate a loan on secured terms after the BIA declined to approve the assignment, Wapato Heritage declined to consider her offer; instead it ignored it and "put it on a shelf." SOF ¶ 70. Wapato Heritage did not turn to its owners to secure $200,000; and the owners of Wapato Heritage did nothing whatsoever to attempt to put $200,000 into their company, notwithstanding that one of them has substantial individual wealth in the form of real estate and automobiles. SOF ¶¶ 98, 100, 104-109.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

In those circumstances, where Wapato Heritage actually had the funds it claims would have led to a $32 million gain, its failure to use the money to secure that gain was not only economically irrational, it was a breach of its duty to mitigate. Consequently, Wapato Heritage is not entitled to lost profits damages.

3.  **Plaintiffs Cannot Prove Contract Damages Because They Did Not Seek "Cover"**.

The traditional measure of contract damages is the amount necessary to put the plaintiff in the position it would have been in but for the breach. In this instance, Plaintiffs took no steps to find a substitute performance; they suffered no traditional contract damages.

4.  **Plaintiffs Cannot Rebut Sandra Evans' Expert Testimony Showing That The Future Value of the Repayment Funds, After Offsets, is Zero**.

Plaintiffs claim damages in the form of the funds not lent by Sandra Evans. Complaint, ¶ 33(ii) (Ct. Rec. 1). That claim also fails because those funds were to be loaned to Wapato Heritage, subject to a duty, joint and several, by the individual Nephews and Wapato Heritage to ensure the funds were repaid. When the funds were not loaned, the Nephews and Wapato Heritage were relieved of their correlative duty to repay. Accordingly, as to the principal, the matter is a wash. A plaintiff cannot recover loan principal free of any duty to repay, as a matter of law and common sense.

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

However, a peculiar feature of the Settlement Agreement was that after Sandra Evans was to loan Wapato Heritage certain funds, subject to BIA approval, Wapato Heritage and its owners bound themselves to repay the money, and then Sandra Evans in turn promised to hold the repaid principal in an account until her death, at which time it would be payable to the individual plaintiffs. SOF ¶ 25.  Accordingly, while Plaintiffs cannot claim the *actual present* value of the funds not loaned as damages, because of the "payable on death" feature of the Settlement Agreement they may arguably have a claim, if they establish a breach, to the *discounted future* value of funds to be paid to them upon the death of Sandra Evans.

Sandra Evans has produced the expert report of Robert Duffy, an expert accountant.  Mr. Duffy presented a report to evaluate the present value of a future fund, assuming that all parties fully performed under that Settlement Agreement, that is:  (1) Sandra Evans lent Wapato Heritage the funds, (2) the funds were repaid; (3) the funds were held until Sandra Evans' death then paid to the Nephews; (4) Plaintiffs paid Sandra Evans $75,000 as specified in the Settlement Agreement (it is undisputed that this amount was required to be paid but has not been paid; SOF ¶ 132); and (5) Plaintiffs purchased accidental death and dismemberment insurance for the benefit of Sandra Evans (it is undisputed that

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

provision of such insurance was a requirement of the Settlement Agreement that has not been performed; SOF ¶ 75-76, 79).  SOF ¶ 131.  Mr. Duffy concluded that there were no damages to Plaintiffs.  SOF ¶ 133.  Plaintiffs presented no rebuttal expert.

Upon the unrebutted testimony of Mr. Duffy, Plaintiffs have benefitted from their own unperformed obligations to the extent exceeding the present value of Sandra Evans' alleged unperformed obligations.  Accordingly, even if a breach of contract were proven, Plaintiffs have not established damages.

## C.    PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF.

Plaintiffs seek specific performance.  Complaint, Ct. Rec. 1, at ¶ 3.  They cannot show entitlement to specific performance.  First, Sandra Evans has already performed exactly according to the terms of her promise.  Second, the relief Plaintiffs seek in their complaint is the payment of money by Sandra Evans.  Specific performance is generally not available to compel the payment of money, either because specific performance is reserved for the enforcement of unique promises, like a promise to make a will, *Cummings v. Sherman*, 16 Wn.2d 88 (1943)), or more typically, to convey real estate, *Sheldon v. Hallis*, 72 Wn.2d 993 (1967)), and money is not unique; or because specific performance is unavailable where there is an adequate remedy at law (i.e., damages).  *Washington Trust Bank*

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

*v. Circle K Corp.,* 15 Wash. App. 89 (Div. 3, 1976).  Thus, promises to make loans are not enforceable by specific performance.  *Stewart v. Bounds,* 167 Wash. 554, modified 170 Wash. 698 (1932).  Third, specific performance is not available where the consent of another is a condition precedent to the relief sought.  *Ross v. Harding,* 64 Wn.2d 231 (1964).  Here, the BIA has not consented.

## IV.  CONCLUSION

Sandra Evans respectfully requests that the Court enter summary judgment dismissal of Plaintiffs' claims against Defendant Sandra Evans.

DATED this <u>8th</u> day of May 2009.

WITHERSPOON, KELLEY, DAVENPORT
& TOOLE, PS


*/s/ Leslie R. Weatherhead*
LESLIE R. WEATHERHEAD, WSBA NO. 11207
Email:  lwlibertas@aol.com
GEANA M. VAN DESSEL, WSBA NO. 35969
Email:  gmv@wkdtlaw.com
Counsel for Defendant Sandra Evans

Witherspoon, Kelley, Davenport & Toole
422 W. Riverside, Suite 1100
Spokane, WA  99201

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265

## CERTIFICATE OF SERVICE

I hereby certify that on the <u>8th</u> day of May, 2009,

1.      I electronically filed the foregoing NOTICE OF COMPLIANCE with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following: **Michael A. Arch, R. Bruce Johnston, Anthony S. Broadman, Gabriel S. Galanda, Scott B. Henrie, Shelley Buckholtz and Don Curran.**

2.      I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants at the address listed below: **None.**

I hereby certify that I have mailed by United States Postal Service the document to the following CM/ECF participants at the address listed below: **none.**

3.      I hereby certify that I have hand-delivered the document to the following participants at the addresses listed below: **none**.

_/s/ Geana M. Van Dessel_
Geana M. Van Dessel
Witherspoon, Kelley, Davenport & Toole
422 W. Riverside Ave., Suite 1100
Spokane, WA 99201-0300
Email:  gmv@wkdtlaw.com

WITHERSPOON, KELLEY, DAVENPORT & TOOLE, P.S.
A PROFESSIONAL SERVICE CORPORATION
ATTORNEYS & COUNSELORS
1100 U.S. BANK BUILDING
422 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0300
(509) 624-5265