UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WAPATO HERITAGE, LLC, a Washington Limited Liability Company; KENNETH EVANS; JOHN WAYNE JONES; and JAMIE JONES, individual resident of Washington State,<br><br>        Plaintiffs,<br><br>        v.<br><br>SANDRA D. EVANS, an individual not a resident of Washington State,<br><br>        Defendant. | NO. CV-07-314-EFS<br><br>**ORDER DENYING DEFENDANT EVANS' MOTION TO DISMISS FOR LACK OF FEDERAL QUESTION JURISDICTION** |

A hearing occurred November 13, 2009, in the above-captioned matter in Richland, Washington. Plaintiffs Wapato Heritage, LLC ("Wapato Heritage"), Kenneth Evans,[1] John Wayne Evans, and Jamie Jones were represented by Bruce Johnston and Michael Arch. Mary Wynne appeared on Defendant Sandra Evans' behalf. Before the Court was Defendant's Motion to Dismiss for Lack of Federal Question Jurisdiction (Ct. Rec. 538). Defendant Evans seeks dismissal under Federal Rule of Civil Procedure

---

[1] Kenneth Evans was present.

ORDER ~ 1

12(b) on the grounds that 1) the Complaint fails to state a federal question and 2) the Court's assumption of jurisdiction will interfere with tribal self-government.  This Order serves to supplement and memorialize the Court's oral finding that subject matter jurisdiction exists based on a federal question.

**A.   Timing of Motion**

Although Defendant asserted a subject-matter jurisdiction defense in her answer, Defendant did not pursue this defense for approximately two years.  This is the first time the Court has had a defendant sit on its subject matter jurisdiction argument until *after* the dispositve motion filing deadline passed.  The Court is bewildered by this strategy, especially since it forced Defendant, along with Plaintiffs and the Court, to expend time and money on discovery and other legal issues - Defendant alone has spent over $750,000 in attorneys fees and costs in this action.  (Ct. Rec. 538-4 ¶ 12.)

Nonetheless, because subject-matter jurisdiction involves a federal court's power to hear a case, a subject-matter-jurisdiction argument can never be forfeited or waived.  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Accordingly, once Defendant advised that she was actively challenging subject-matter jurisdiction in the fall 2009, the Court asked the parties to brief and argue the matter.  After reviewing the submitted material and legal authority and hearing from counsel, the Court is fully informed.

**B.   Standard**

A federal court only has the "power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant

ORDER ~ 2

thereto." *Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1440 (9th Cir. 1997) (emphasis omitted) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). The basic statutory grants of federal court subject-matter jurisdiction are contained in 21 U.S.C. § 1331, which provides for federal-question jurisdiction, and 21 U.S.C. § 1332, which provides for diversity of citizenship jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006). Here, the Court is only addressing whether the Complaint alleges a federal question.

Federal-question jurisdiction exists when the plaintiff[2] pleads a colorable claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Case law has interpreted § 1331 to include 1) a cause of action created by federal law or 2) a state-law claim, which has - as an essential component - a federal law that creates a cause of action or reflects an important national interest. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 501 (2006); Erwin Chemerinsky, Federal Jurisdiction 295 (Aspen Publishers 2007).

Defendant characterizes Plaintiffs' claims as state law breach of contract claims and therefore contends that no federal question exists. Although in its July 8, 2009 Order the Court was called to determine whether Defendant breached the Settlement Agreement, which on its face appears to be a state law claim, a deeper probe of Plaintiffs' claims shows that a federal question exists.[3] Critical to the Court's analysis

---

[2] Jurisdiction cannot be based on a federal defense raised in the answer. *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1314 (9th Cir. 1982).

[3] The Court is cognizant that it applied Washington law to

ORDER ~ 3

of Plaintiffs' claims is understanding the purpose of the Settlement Agreement - the Settlement Agreement serves to alter the testate distribution of William Wapato Evans' estate, which included Indian trust property.

According to a federal statute, no will disbursing trust property "shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior. . . ." 25 U.S.C. § 373. *See also Cultee v. United States*, 713 F.2d 1455, 1459 (9th Cir. 1983) (recognizing that an Indian will as to trust assets is only valid if approved by the Secretary of the Interior as required by 25 U.S.C. § 373); *Hanson v. Hoffman*, 113 F.2d 780 (10th Cir. 1940) (recognizing that Indian wills must receive approval from the Secretary of the Interior). A federal regulation allows the parties to an Indian trust probate to

---

interpret the Settlement Agreement. (Ct. Rec. 382 p. 9 n.10.) The Court concludes it was appropriate to utilize these interpretation standards given the parties' implicit agreement to apply Washington law, notwithstanding the general rule that "federal law supplies the standards for determining valid execution and proper interpretation of wills." *In re Estate of Covington*, 450 F.3d 917, 924 (9th Cir. 2006). Regardless, the Court complied with federal law interpretation principles, which requires the Court to determine the parties' intent at the time of the Settlement Agreement based upon a review of the entire Settlement Agreement. *See, e.g., Estate of Bruning v. Comm'r of Internal Revenue*, 888 F.2d 657, 659 (10th Cir. 1989).

ORDER ~ 4

settle the matter. 43 C.F.R. 4.207.[4] The settlement, however, *must* be approved by the Secretary of the Interior. *Id.*

This is what occurred here. The parties to the will desired to settle. After holding hearings, Department of Interior Office of Hearings and Appeals (OHA) Judge M.J. Stancampiano, entered an Order approving the Settlement Agreement. The order specified, "[t]his order will be construed as any other order of distribution establishing title in heirs and beneficiaries and will not be construed as a partition or sale transaction within the provisions of 25 CFR part 152."

After Judge Stancampiano's order approving the Settlement Agreement began final, the estate was to be distributed in accordance with the agreement. The Settlement Agreement, however, called for future action by Defendant; as the Court found in its July 2009 Order, Defendant has failed to perform agreed-upon obligations. Upon realizing that Defendant was failing to perform her Settlement Agreement obligations, Plaintiffs sought the assistance of the OHA. OHA Judge Lynch, who took over the probate matter from OHA Judge Stancampiano, determined that OHA did not have the federal regulatory authority to enforce the Settlement Agreement. (Ct. Rec. 331 ex. E & ex. F.)

In light of 25 U.S.C. § 373 and the federal regulations implementing this statute, particularly 43 C.F.R. § 4.207, the Court concludes that Plaintiffs' claims present a federal question. It is clear that the Settlement Agreement's validity is dependent on federal law. *In re Estate of Covington*, 450 F.3d at 924 (finding that execution and

---

[4] In 2008, the substance of this regulation was moved to 43 C.F.R. § 30.150.

ORDER ~ 5

interpretation of Indian will disposing of trust property is question of federal not state law). Further, a federal proceeding is necessary to enforce the approved Settlement Agreement because the OHA lacks enforcement authority. The Court highlights that it is not reviewing OHA Judge Stancampiano's order approving the Settlement Agreement, but rather is being called to enforce the approved Settlement Agreement. *C.f. Kakaygeesick v. Salazar*, — F. Supp. 2d — , 2009 WL 2916854 (D. Minn. 2009). Also, this federal enforcement action of the OHA-approved Settlement Agreement does not interfere with tribal self-government.

Now that subject-matter jurisdiction is resolved, the Court is prepared to enter judgment in Plaintiffs' favor. Consistent with the Court's prior rulings, Plaintiffs are to receive 35% of the MA-10 revenues for the agreed-upon five-year period. In addition, Plaintiffs will receive prejudgment interest at the federal rate, as well as reasonable attorney fees and costs.[5] The Court, however, will defer entry of judgment as the parties have indicated they wish to engage in mediation.

---

[5] Assuming that the other quarterly 35% revenues since 2006 are similar to the amount deposited with the registry of the Court in the fall of 2009 ($85,887.38), Plaintiffs could be awarded judgment of more than a million dollars plus prejudgment interest. As for an award of attorneys fees and costs to Plaintiffs, the Court recalls that Defendant has incurred over $750,000 in attorneys fees and costs for herself and Dan Gargan. (Ct. Rec. 538-4 ¶ 12.)

ORDER ~ 6

1  Accordingly, **IT IS HEREBY ORDERED:** Defendant's Motion to Dismiss
2 for Lack of Federal Question Jurisdiction **(Ct. Rec. 538)** is **DENIED**.
3  IT IS SO ORDERED. The District Court Executive is directed to enter
4 this Order and provide copies to counsel.
5  **DATED** this   23rd    day of November 2009.

6

7                    S/ Edward F. Shea
                       EDWARD F. SHEA
8                 United States District Judge

9 Q:\Civil\2007\0314.subj.matter.juris.wpd

ORDER ~ 7