UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WAPATO HERITAGE, LLC, a Washington Limited Liability Company; KENNETH EVANS; JOHN WAYNE JONES; and JAMIE JONES, individual residents of Washington State,<br><br>Plaintiffs,<br><br>v.<br><br>SANDRA D. EVANS, an individual, not a resident of Washington State,<br><br>Defendant. | NO. CR-07-0314-EFS<br><br>**ORDER RULING ON PENDING MOTIONS AND DIRECTING ENTRY OF JUDGMENT** |

This lawsuit's subject-the distribution of William Wapato Evans, Jr.'s estate ("Estate")-has been contested since his passing in 2003. Because the parties' most-recent settlement attempt was unsuccessful, the Court now directs entry of judgment in Plaintiffs' favor.[1]  The Court

---

[1] In the November 23, 2009 Order (Ct. Rec. 574), the Court advised the parties that it was prepared to enter judgment but would wait until the anticipated mediation.  The Court was advised that the parties' early January 2010 mediation was unsuccessful.  Accordingly, the Court enters judgment.

ORDER ~ 1

first addresses the pending motions and then discusses entry of the judgment

**A.   Defendant's First Amended Motion for Reconsideration**

Reconsideration is appropriate if the Court 1) is presented with newly-discovered evidence, 2) committed clear error or the initial decision was manifestly unjust, or 3) if there is an intervening change in controlling law. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997); *All Hawaii Tours, Corp. v. Polynesian Cultural Ctr.*, 116 F.R.D. 645, 648 (D. Hawaii 1987), *rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988). Only the second prong is at issue. Defendant submits that the Court made manifest errors of law by ruling: 1) that it has federal question jurisdiction to enforce the Settlement Agreement, 2) that federal law, not state law, governs interpretation of the Settlement Agreement, and 3) that federal-court enforcement of the Settlement Agreement does not interfere with tribal self-government.

The Court considered Defendant's legal arguments and the principles articulated by the cited cases, statutes, and regulations when ruling on the issue of federal jurisdiction. (Ct. Rec. 574.) As the Court set forth in its Order, this is not a "standard" settlement agreement interpretation case, rather the Court was called to enforce the Settlement Agreement, which served to alter the testate distribution of Indian trust property and therefore was required to be approved by the Secretary of the Interior. Analysis of the enforcement of this Settlement Agreement required the application of federal law and principles. For the reasons set forth in the Court's November 23, 2009 Order, the Court abides by its conclusion that Plaintiffs' claims present

ORDER ~ 2

a federal question that is properly before this Court. Defendant's reconsideration motion is denied.

**B.    Plaintiffs' Motion for Sanctions Pursuant to FRCP 11**

Plaintiffs ask the Court to 1) declare that defense counsel Mary Wynne and/or Defendant violated Federal Rule of Civil Procedure 11 by challenging subject matter jurisdiction and contending that the Colville Tribal Court is the only court with subject matter jurisdiction to enforce the Settlement Agreement and 2) impose appropriate sanctions. Although the Court abides by its subject matter jurisdiction findings, the Court does not find a Rule 11 violation and therefore denies Plaintiffs' motion.

**C.    Plaintiffs' Motion for Judgment Declaring Evans' Rights in Estate to be Forfeited and Terminated**

Plaintiffs argue that Defendant's rights, title, and interest in the Estate should be forfeited as a matter of law because she challenged the July 2006 Settlement Agreement, which allegedly incorporated the May 2003 Will's No-Contest Clause. Defendant counters that either 1) this issue is not properly before the Court, or 2) the No-Contest Clause was not incorporated into the Settlement Agreement. As set forth below, the Court agrees that this issue is not properly before the Court and therefore does not resolve whether the No-Contest Clause was incorporated into the Settlement Agreement.

Plaintiffs initiated this action in October 2007. The Complaint does not allege either that Defendant violated the Will's No-Contest Clause or that Defendant's rights in the Estate should be forfeited.

ORDER ~ 3

Plaintiff's August 2008 discovery responses did state that one of their "back-up damage theories" involved Defendant's alleged violation of the Will's No-Contest Clause. (Ct. Rec. 493 at 7.) But in March 2009, the Court directed the parties to file notices no later than May 5, 2009, identifying which previously-plead claims and/or affirmative defenses would be adjudicated at trial. (Ct. Rec. 261 at 3.) Defendant timely filed her notice. (Ct. Rec. 287.) So did former Defendant Dan Gargan. (Ct. Rec. 288.) Plaintiffs filed nothing, meaning neither the Court nor Defendant knew what claims beyond those set forth in the Complaint Plaintiffs were still pursuing.

Although the No-Contest Clause occasionally was at issue during discovery, Plaintiffs first requested documentary discovery specific to the No-Contest Clause via informal letter on July 22, 2009. (Ct. Rec. 464-2, Ex. E-1.) Plaintiffs first formally raised the No-Contest Clause as an eligible trial issue in their July 21, 2009 submission (Ct. Rec. 401) identifying potential trial issues–less than two weeks before the then-scheduled August 3, 2009 trial. Due to a death in the family and trial conflicts, the Court eventually reset the trial to October 15, 2009. (Ct. Rec. 470.)

The Court determines Defendant was not formally notified that Plaintiffs would be pursuing the No-Contest Clause issue at trial until late-July 2009. Plaintiffs did provide Defendant with informal notice through routine discovery. But Plaintiffs ignored the Court-ordered Notice of To-Be-Adjudicated Claims/Defenses filing deadline, which occurred at the close of discovery. The purpose of this Notice is to put

ORDER ~ 4

each party - and the Court - on formal notice of what claims the parties are still pursuing at the completion of discovery. Plaintiffs' failure to submit this document was relied on by Defendant as acknowledgment that the only claims Plaintiffs were pursuing were the claims in the Complaint. Thus, Defendant was not given an opportunity to conduct any last-minute discovery or engage in any formal motions practice on this issue.

In summary, Plaintiffs' alleged No-Contest Clause violation is not properly before the Court. Plaintiffs' Motion for Judgment Declaring Evans' Rights in Estate to be Forfeited and Terminated (Ct. Rec. 453) is denied.

**D.  Plaintiffs' Motion to Declare Rights in '05 4th Quarter MA-10 Payments**

Plaintiffs argue that the Settlement Agreement and bank records unequivocally establish their ownership in 80% of the 2005 4th Quarter MA-10 payments. Defendant contends that the very same documents establish her ownership in the same monies.

On November 9, 2005, Bureau of Indian Affairs (BIA) Office of Hearings and Appeals (OHA) Probate Judge M.J. Stancampiano entered an Order approving a division of the Estate between Plaintiffs and Defendant. The Order directed all income paid into the Estate account on or before January 10, 2006, to be distributed 80/20 between Plaintiffs and Defendant, respectively. "Any income which may have been paid into the [E]state account **after January 10, 2006,** should immediately be transferred to [Defendant]." (Emphasis added.) At issue is when the

ORDER ~ 5

fourth quarter MA-10 proceeds were deposited into the Estate account. Monies deposited into the Estate account on or before January 10, 2006, are divided 80/20 between the parties; monies deposited into the Estate account after January 10, 2006, were to go to Defendant.

On January 3, 2006, Wright-Wapato, Inc. sent four checks totaling $166,982.96 to the BIA. These checks represented rent for MA-10 for the fourth quarter of 2005. The checks arrived at the BIA's Colville Branch on Friday, January 6, 2006. The checks were processed on Monday, January 9, 2006, and deposited into the Estate account on Wednesday, January 11, 2006.

Judge Stancampiano's Order makes clear - and the parties agreed - that only funds "**in the** decedent's Individual Indian Money (IIM) estate **account** as of January 10, 2006" were to be divided 80/20 between the parties. (Ct. Rec. 331-2, Ex. C at 40 (emphasis added.)) Seeking clarification on this very issue, Judge Stancampiano posed the following question to the BIA's Office of Special Trustee (OST): "When were [the four (4) checks] actually deposited into the decedent's IIM account?" (Ct. Rec. 485, Ex. A.)  The OST provided a straightforward response: "Funds deposited into the Estate account on January 11, 2006." *Id.* To rebut the OST's statement, Plaintiffs cite to various trust regulations stating that trust funds are deposited into trust accounts within twenty-four hours of receipt. (Ct. Rec. 483 at 8.)  But as Defendant highlights, the BIA's apparent failure to adhere to these regulations raises, at best, an issue of potential third-party liability for the deposit delay.

ORDER ~ 6

In summary, Plaintiffs' motion is denied because the MA-10 proceeds for the fourth quarter of 2005 were appropriately paid to Defendant.

**E.   Entry of Judgment in Plaintiffs' Favor**

After resolving these outstanding motions, the Court is prepared to enter judgment.  Judgment may be entered without a trial because 1) the Court previously found that a) Defendant breached the Settlement Agreement's "loan" requirement and implied covenant of good faith and fair dealing by retaining 100% of the MA-10 income and b) Defendant's continued refusal to "lend" Wapato Heritage, LLC 35% of the MA-10 income evidenced wilful repudiation of her future loan obligations under the Settlement Agreement (Ct. Rec. 428), and 2) the parties agreed that damages can be calculated by simple mathematical computations.

1.   <u>Damages</u>

Because the Settlement Agreement required Defendant to loan Plaintiff Wapato Heritage, LLC 35% of the loan proceeds from January 2006 to December 2006, and Defendant has failed to do, Plaintiff Wapato Heritage, LLC is entitled to principle damages in the amount of $1,355,099.62.[2]  Plaintiff Wapato Heritage, LLC is also entitled to prejudgment and post-judgment interest at the federal rates.

---

[2] This number is based on 1) the undisputed fact that 35% of the MA-10 monies from the first quarter of 2006 through the second quarter of 2009 totals $1,191,500.94 and 2) the amount deposited into the Court registry, representing 35% of the MA-10 monies for the third quarter of 2009 ($85,979.17) and the fourth quarter of 2009 (77,619.51).

ORDER ~ 7

Accordingly, Plaintiff's Motion for Entry of Judgment for General Damages Against Defendant Evans (Ct. Rec. 459) is granted.

### 2. Equitable Remedies

Plaintiffs requested specific performance (i.e., an order compelling Defendant to honor her obligations under the Settlement Agreement) and injunctive relief (i.e., an order preventing Defendant Evans from further delaying payments under the Settlement Agreement). The Court finds legal remedies (damages) adequately protect Plaintiffs for Defendant's pre-judgment breaches. However, because it is unknown what the MA-10 proceeds will be for the remainder of the five-year period, legal remedies are inadequate for Defendant's post-judgment anticipatory breaches of the Settlement Agreement. *See* Williston on Contracts, § 67:8 (2009) (recognizing that equitable remedies are only appropriate if legal remedies are inadequate); *see also Lucente v. IBM Corp.*, 310 F.3d 243 (2d Cir. 2002). Therefore, in regards to the remaining loan payments for the five-year period (all quarters of 2010), the Court orders Defendant to ensure that BIA OST has the necessary documents to allow 35% of the MA-10 monies deposited into her IIM account to be deposited into the Court registry. The Clerk of Court will then promptly pay this amount to Wapato Heritage, LLC. The Court retains jurisdiction to ensure that Defendant complies with her loan obligation for the full five-year period.

///
///
///

ORDER ~ 8

**F. Conclusion**

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Judgment Declaring Evans' Rights in Estate to be Forfeited and Terminated **(Ct. Rec. 453)** is **DENIED**.

2. Plaintiffs' Motion for Entry of Judgment for General Damages Against Defendant Evans **(Ct. Rec. 459)** is **GRANTED**.

3. Plaintiffs' Motion to Declare Rights in '05 4th Quarter MA-10 Payments **(Ct. Rec. 482)** is **DENIED**.

4. Defendant's First Amended Motion for Reconsideration **(Ct. Rec. 580)** is **DENIED**. Defendant's initial Motion for Reconsideration **(Ct. Rec. 579)** is **DENIED AS MOOT**.

5. Plaintiffs' Motion for Sanctions Pursuant to FRCP 11 **(Ct. Rec. 582)** is **DENIED**.

6. **Judgment is to be entered** as follows:

   Under the terms of the Settlement Agreement, as interpreted by BIA OHA Judge Stancampiano, Defendant Evans is required to loan, for a five-year-period beginning January 1, 2006, 35% of the MA-10 monies deposited into her IIM account to Wapato Heritage, LLC. This is to be accomplished by:

   a) <u>For MA-10 monies received for January 1, 2006, through the fourth quarter of 2009</u>: Defendant Evans is liable for the following amounts to Plaintiff Wapato Heritage, LLC:
   - $1,355,099.62 in principle;
   - federal prejudgment interest in the amount of 7.4%, compounded annually; and

ORDER ~ 9

- federal post-judgment interest in accordance with 28 U.S.C. § 1961.

b) <u>For MA-10 monies received during 2010</u>: Defendant shall ensure that the OST has the necessary and complete documents, including OST 01-004/6, W-9, and Power of Attorney (if necessary), to allow OST to forward 35% of the MA-10 monies deposited into Defendant's IIM account to the Court Registry. *See* Ct. Rec. 610 for guidance.

7. The funds currently deposited in the Court Registry relating to this case shall be promptly paid to Plaintiff Wapato Heritage, LLC. Upon receipt of these funds, Plaintiff Wapato Heritage, LLC shall file a partial satisfaction of this judgment.

8. Any future funds received from the OST relating to this case shall be promptly forwarded to Plaintiff Wapato Heritage, LLC by the Clerk of Court.

9. The Court retains jurisdiction to ensure that Defendant complies with her loan obligation for the full five-year period.

///
///
///
///
///
///
///
///
///

ORDER ~ 10

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to 1) all counsel, 2) the Financial Administrator, 3) Pamela De Rusha of the U.S. Attorney's Office for the Eastern District of Washington, and 4) Office of Regional Solicitor (Attn. Colleen Kelley, 805 SW Broadway Ste. 600, Portland, OR 97205) and 5) two copies to OST Colville Agency, PO Box 111, Nespelem, WA 99155 (one to the attention of the Superintendent and the other to the attention of Margie Hutchinson).

**DATED** this  9th   day of February 2010.

S/ Edward F. Shea
EDWARD F. SHEA
United States District Judge

Q:\Civil\2007\0314.enter.judgmt.wpd

ORDER ~ 11